John W. Dodge *vs.* Bridget Lavin *et al.*

Bridget Lavin *vs.* John W. Dodge.

Joseph H. Marks, *et al.*, *vs.* John W. Dodge.

JULY 6, 1912.

Present: Johnson, Parkhurst and Sweetland, JJ.

*(1) Deeds. Description.*

In construing the description in a deed, the grant of certain privileges over a strip of land is inconsistent with the grant of a fee therein.

*(2) Adverse Possession.*

Claimant and her ancestors in title for a period exceeding the statutory requirement had exercised dominion over the land in controversy, which was a lot extending to the water; had from time to time filled in the shore front and cultivated the grass:—

*Held,* that such acts were from their nature and extent sufficiently obvious to operate as a notice to others claiming an interest in the land and were as continuous as the care and character of the land demanded.

BILLS IN EQUITY. Heard together on bills, answers and proof, and certified under Gen. Laws, 1909, cap. 289, § 35.

VINCENT, J. These are three suits in equity. The first is brought by John W. Dodge against Bridget Lavin and others and prays for the partition of a certain strip of land lying in the town of Barrington. The second is brought by Bridget Lavin and prays that certain deeds from the heirs of William H. Allin to Dodge may be declared void, either wholly or in part. The third prays that certain deeds made to Bridget Lavin may be declared valid.

All of these deeds relate to the strip of land which is the subject of the first named or partition suit and is shown in red on the accompanying survey.

These cases were, by agreement, heard together in the Superior Court upon bill, answer and proofs and were upon consideration of the same certified to this court for determination under Chap. 289, Sec. 35, Gen. Laws of 1909.

Dodge alleges in his bill that one William H. Allin, at the time of his decease in 1894, was sole owner in fee simple of the strip of land referred to; that he died intestate leaving no children or direct descendants and that the title descended to collateral heirs.   That afterwards some of these collateral heirs conveyed their interests to him, some to the respondent, Bridget Lavin, while others have made no conveyance.   The title of the property is now vested as follows:  John W. Dodge 101–108; Bridget Lavin 4–108; Nellie Frey 1–108; Grace I. Schiele 1–108, and Harry S. Kinnicutt 1–108. Dodge further alleges that said estate is a narrow strip of shore land, with certain riparian rights connected therewith; that it cannot be divided by metes and bounds so as to give to each of the co-owners their respective interests and he prays that such partition may be effected through a sale, &c.

Bridget Lavin alleges, in her bill, that the deed of August 22, 1857, from Thomas R. Allin and William H. Allin to Patrick Martin and Margaret Martin included the strip of land in question, and that upon the decease of her father and mother, the said Patrick and Margaret Martin, she inherited the same and has since been in continuous possession thereof. She also sets up a title by adverse possession.

She further alleges that after the decease of William H. Allin, Howard E. Allin, as administrator upon his estate, was authorized by a decree of the Probate Court of the town of Barrington,—on September 10, 1904,—to sell the interest of William H. Allin in a tract of land lying inland, to the east of her said land and still further away from Bullock's Cove, and he accordingly advertised that he would sell at auction on August 2, 1898, the interest of William H. Allin in a parcel of land, with an oyster house and wharf, without claiming any right to sell, or indicating any intention of selling, the strip of land which was a projection of the Lavin land to the west; that at said auction sale Dodge purchased the southerly part of the parcel advertised, with an oyster house standing thereon, and a wharf extending therefrom into the Cove, and received a deed from the administrator, September 21, 1898,

but that no part of the shore, at the five rod projection of the Lavin land, entered into such purchase; that later by authority of the same decree he conveyed to Dodge by deed of April 10, 1899, a parcel of land next north of the former purchase, pursuant to an auction said to have been held April 4, 1899; that upon the second parcel of land Dodge erected valuable improvements; that said sales to Dodge were void because (1) the Probate Court had not authorized the sale of said property and (2) under General Laws, 1896, cap. 213, the authority given to said administrator had expired; that neither the complainant, Bridget Lavin, nor the administrator or heirs of William H. Allin disputed the right or title of Dodge to that portion of the property advertised by said administrator or which the deeds to Dodge purport to convey, or to the shore in front thereof.

Bridget Lavin further alleges that following the auction of August 2, 1898, Dodge, by filling, changed the wharf from a narrow plank structure to one of wide, solid construction; that in 1906 the said complainant, Lavin, first heard that Dodge claimed her shore at the said five rod projection; that Dodge having learned that his title to what the deeds purported to convey to him was defective proceeded to procure a deed from certain heirs of William H. Allin, with the professed intention of perfecting such title, but that the description, in said last named deed, was drawn to include not only the property purchased by Dodge at the auctions of August 2, 1898, and April 4, 1899, but also the shore, at said five rod projection of the Lavin land, which was not included in the previous deeds to Dodge.

The complainant Lavin also sets forth in her bill, by way of averment upon information and belief, that the aforesaid deed from the Allin heirs was procured by misrepresentation and the withholding of facts; that the said heirs upon learning that they had executed the deed to Dodge through deception, executed and delivered, to the complainant Lavin, deeds releasing to her all of their interest in the strip of land in question.

The complainant Lavin disclaims any desire to disturb the title of Dodge to the oyster house lot, fronting ten rods on Bullock's Cove by five rods deep, with the oyster house and wharf as described in the deed from Howard E. Allin, administrator, to Dodge, or the dwelling house described in the later deed, but she prays that such deeds may be annulled in so far as they purport to cover the strip of land in question and to convey therein the interests of heirs of William H. Allin.

Joseph H. Marks in his bill in which Bridget Lavin is also a party complainant alleges that the deed of August 22, 1857, from Thomas R. Allin and William H. Allin to Patrick Martin and Margaret Martin conveyed a tract of land situated in Barrington; that the southerly five rods of the west end of said tract extended five rods further west than the balance of the west end of said tract, and he avers, upon information and belief, that the five rod projection extended to mean high water mark of Bullock's Cove; that Patrick and Margaret Martin in their lifetime and Bridget Lavin, since their decease, have continuously been in possession of said tract to the present time.

The Marks' bill further sets up title by adverse possession in Bridget Lavin; the appointment of Howard E. Allin as administrator of the estate of William H. Allin; the two auction sales and deeds from Howard E. Allin, as administrator, to Dodge; that such sales were unauthorized and void; that neither Marks, Bridget Lavin nor the administrator or heirs of William H. Allin ever disputed the right or title of Dodge to the portion of the property which was advertised and covered by the deeds made in pursuance of the two auction sales.

Further allegations in the Marks' bill set forth the changes made by Dodge in the wharf; the receipt of information by Bridget Lavin in 1906, that Dodge claimed the shore at the five rod projection of her land; and that in 1908, Dodge had apparently learned for the first time that the two convey-

Brief Exhibit.

D.S.B.

East Road

R.R.Higgin Co.

Land in question in red.

(S.74E  27rods 1link by deed.) D.S.

N 70-41 W.  448.6'

(S.15 W. Juniper Hedge by deed.)
S.18-19 W. 262.5'

pipe at angle.

End of fence 29ft. from angle.

S.74E 5 rods by deed.

S.11-30E 82.5'

N.16-19E  92.5

D.S.B. N.16-19E

11 ft.

H  6

Harbor Line

Oyster House

Wharf

F

P. Martin Estate

J.W.Dodge

pipe-B
(by deed)

H.W.

(N.15E. 10 rods 12½ links by deed)
N.18-19 E. 173.33

(S.74E 22 rods by deed)
S. 11-20 E.  365.0

High Water by State Survey in 1885

N.

Now or formerly Robert Broome

Bullocks Cove

John W. Dodge
Survey of P. Martin Estate
at Drownville
Scale  100=1"

O. Perry Sarle. Engineer.   Prov. R.I.
1906

ances from Howard E. Allin, administrator, did not carry a valid title.

The Marks' bill in continuation sets forth the conveyance of Marks' interest in the strip of land in question to Dodge; the method and manner in which the execution of such deed was procured; that is, under cover of correcting the title of Dodge in the property purchased at the auction sales from the administrator of William H. Allin; the making of a deed subsequently—January 7, 1910—from Marks to Lavin conveying his interest in the latter's property; that at the time of giving said last named deed, the complainant, Marks, first learned that his prior deed to Dodge purported to cover the five rod projection of the Lavin land, and that the complainants Marks and Lavin do not seek to disturb Dodge in the enjoyment of the property covered by his deeds from Allin's administrator and acquired through the auction sales before mentioned.

The bill prays for the annulment of the deed from Marks to Dodge, so far as the same relates to the land lying between Bullock's Cove and the westerly five rod line of the said Lavin land.

The three chief questions presented for consideration by these several bills are: First, has Bridget Lavin any title to the strip of land in question, being the extension of her five rod line as indicated in red on the accompanying survey, under the deed from Thomas R. and William H. Allin to Patrick and Margaret Martin of August 22, 1857? Second, has Bridget Lavin a title by adverse possession in said strip of land? Third, should the deeds from the heirs of William H. Allin to Dodge be annulled so far as the same purport to include the strip of land in question?

The deed of August 22, 1857, from Thomas R. and William H. Allin to Patrick and Margaret Martin conveys a parcel of land lying next north of the Bicknell, later the Higgins, land. The description in this deed is as follows: "A certain piece or parcel of land situated in Barrington and bounded as follows, viz.: Beginning at the Southeast corner of the Lot

called the Point Lot, and running North 74 degrees West, Twenty-seven rods and one foot, thence N. 15° East five rods, thence South 74° East five rods, thence N. 15° East, ten rods and twelve and one-half links, thence South 74° East twenty-two rods and one foot, thence South 15° West on the line of a 'Juniper hedge' to the first mentioned corner, being bounded on the South by land of Elizabeth W. Bicknell, and on the East, North and West by land of the aforesaid Thomas R. and William H. Allin, containing two acres and forty seven rods more or less. With the privileges of landing, loading and unloading, his boat, from the west side of the first mentioned five rods, and also of passing to and from said land by the road or path leading to the shore on the Easterly side of the aforesaid land."

From an examination of the survey in connection with the above description we find that the lines are definite, easily followed and exclude the strip of land in red which is the westerly extension of the Lavin property or, in other words, the westerly extension of the five rod line. There is nothing (1) in such deed from which it can be reasonably inferred that it was the intention of the grantors to extend the grant westerly beyond the five rod line, and this conclusion is confirmed by the description itself which includes a grant of certain privileges over and upon this strip of land which would have been entirely unnecessary, as well as inconsistent, with the grant of a fee therein. We think, therefore, that Bridget Lavin acquired no title to the strip of land in question under the deed from the Allins to her father and mother, Patrick and Margaret Martin.

On the other hand it is equally clear that Dodge through the auction sales, and deeds given in pursuance thereof, by Howard E. Allin, as administrator on the estate of William H. Allin, acquired no title in said land for the reason that neither the advertisement of sale nor the description in such deeds, include any part of said strip or contain any language suggestive of such intention.

We now come to the question of title by adverse possession on the part of Bridget Lavin and her predecessors.

"Actual possession of land consists in exercising acts of dominion over it and in making the ordinary use of it. . . . It is ordinarily sufficient if the acts of ownership are of such a nature as a party would exercise over his own property. . . . Actuality of possession is a question compounded of law and fact, and its solution must necessarily depend upon the situation of the parties, the nature of the claimant's title, the character of the land, and the purpose for which it is adapted and for which it has been used. The only rule of general applicability is that the acts relied upon to establish possession must always be as distinct as the character of the land reasonably admits of, and must be exercised with sufficient continuity to acquaint the owner, should he visit the land, with the fact that a claim of ownership adverse to his title is being asserted." See 1 Cyc. of Law & Proc., pp. 983–985, and cases cited.

(2) Upon this question of adverse possession a decided preponderance of the evidence seems to sustain the claim of Bridget Lavin in that regard. There is ample testimony that the Martins and Bridget Lavin for a long period of years, more than the statutory requirement, exercised dominion over the strip of land in question, and that from time to time they filled in the shore front and cultivated the grass outside of the five rod line. These acts from their nature and extent were sufficiently obvious to operate as a notice to others who might claim an interest in said strip of land and were as continuous as the care and character of the land in question demanded.

We think that the title to the strip of land, as indicated in red on the survey, together with all riparian and other rights pertaining thereto is in the said Bridget Lavin by adverse possession, and that she is entitled to have annulled, so far as the same may relate to the land and rights in question, the beforementioned deeds from Marks and the heirs of William H. Allin to Dodge.

This conclusion renders the consideration of any other questions unnecessary.

The parties may present a form of decree to this court in accordance with this opinion.

*Tillinghast & Collins,* for John W. Dodge.
*James C. Collins,* of counsel.
*Doran & Flanagan,* for Bridget Lavin.